**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **WOLVERINE BARCODE IP, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WALGREEN CO.** | § | **Case No. 2:26-cv-00153-JRG** |
| | § | **(Lead Case)** |
| **JAMBA JUICE, LLC** | § | |
| | § | **Case No. 2:26-cv-00021-JRG** |
| **Defendants.** | § | **(Member Case)** |
| | § | |

**<u>DEFENDANT WALGREEN CO.'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 2

ARGUMENT ..................................................................................................................... 5

I.  THIS CASE SHOULD BE DISMISSED BECAUSE IT WAS FILED IN THIS DISTRICT TO CIRCUMVENT AN INJUNCTION ORDER FROM THE WESTERN DISTRICT OF TEXAS ................................................................. 5

II.  THIS CASE SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR DIRECT INFRINGEMENT ......................... 7

    A.  Legal Standard ................................................................................. 7

    B.  The Complaint and Accompanying Claim Chart Fail to State a Plausible Claim for Direct Infringement ........................................ 8

    C.  Plaintiff Fails to Sufficiently Plead Divided or Joint Infringement. ......... 13

III.  PLAINTIFF FAILS TO STATE A CLAIM FOR INDIRECT INFRINGEMENT ......... 14

IV.  DISMISSAL WITH PREJUDICE IS WARRANTED AS A SANCTION ..................... 14

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)..................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................7

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .....................................................................................7

*Cameras Onsite, LLC v. Digital Mgmt. Sols., Inc.*,
No. CV H-16-1172, 2017 WL 6598556 (S.D. Tex. Apr. 3, 2017) ...........................15

*Chamberlain Grp., Inc. v. Techtronic Indus. Co*,
315 F. Supp. 3d 977 (N.D. Ill. 2018) .......................................................................15

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019)..................................................................................15

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) .....................7, 8, 13

*De La Vega v. Microsoft Corp.*,
No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020).........................13

*In re Fillbach*,
223 F.3d 1089 (9th Cir. 2000) .....................................................................................5

*Golden v. Intel Corp.*,
No. 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023) ...........................................7, 13

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017).....................................................................................7

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016)....................................................................................13

*mCom IP, LLC v. Cisco Sys., Inc., Cause No. 6:22-cv-261-ADA*,
Dkt. No. 78 (W.D. Tex. Dec. 18, 2025)..................................................................2, 5

*Mullen Indus. LLC v. Samsung Elecs. Co.*,
No. 2:24-cv-00049-JRG, 2024 WL 4870768 (E.D. Tex. Nov. 21, 2024) ...............................13

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018)........................................................................................14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)........................................................................................................15

*In re Rembrandt Techs. LP Patent Litig.*,
    899 F.3d 1254 (Fed. Cir. 2018)........................................................................................15

*Robinson v. Vigorito, Barker, Patterson, Nichols & Porter, LLP*,
    No. 19-CV-2914 (WFK)(LB), 2019 WL 13417190 (E.D.N.Y. July 31, 2019) .......................6

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020)........................................................................................14

*Whitehead v. Twentieth Century Fox Film Corp.,* No. Civ.A. 05-1462 GK, 2005
    WL 3275905 (D.D.C. Aug. 29, 2005) ...............................................................................5, 16

## INTRODUCTION

This case should never have been filed—and Judge Albright already said so. Plaintiff's counsel is subject to a pre-filing injunction in the Western District of Texas based on his well-documented pattern of filing frivolous patent infringement suits designed to extract nuisance settlements without conducting any meaningful pre-suit investigation. *See* Ex. 1.[1] Plaintiff's counsel, in fact, sought permission from Judge Albright to file this lawsuit in the Western District of Texas, but Judge Albright, after reviewing this very complaint and accompanying claim chart, found them facially inadequate and denied the request. *See* Ex. 2. Rather than abide by that determination or correct the deficiencies, Plaintiff filed an identical suit in this Court.

The Complaint fails to state a claim on the merits. It contains no specific factual allegations of infringement whatsoever, instead deferring entirely to a claim chart that relies on disparate screenshots, dictionary definitions, and repetition of claim language without adequately pleading *how* the accused products allegedly satisfy the claim limitations. The deficiency is not merely technical—Plaintiff's own evidence affirmatively contradicts its allegations. For example, the claim chart relies on a photograph of a barcode consisting solely of vertical lines to satisfy a claim limitation requiring that the barcode contain "at least one special character." But the barcode contains no characters at all, let alone a special one. And, although the asserted method claims require actions by multiple actors (*e.g.*, the system allegedly performs certain steps while the customer allegedly performs other steps, such as "conducting purchases at vendors"), Plaintiff pleads no facts supporting a joint or divided infringement theory. Plaintiff's indirect infringement claims are, likewise, deficient because no underlying act of direct infringement is adequately

---

[1] Copies of the Exhibits are attached to the Declaration of David Lisch ("Lisch Decl.").

1

alleged and Plaintiff pleads no facts to support other elements (*e.g.*, intent and lack of substantial non-infringing use) for induced and contributory infringement, respectively.

Defendant Walgreen Co. ("Walgreens"), therefore, respectfully moves to dismiss this case with prejudice under Fed. R. Civ. 12(b)(6) in view of Plaintiff filing the identical lawsuit in this District that Judge Albright refused to permit in the Western District of Texas.

### **FACTUAL BACKGROUND**

On December 16, 2025, Judge Albright issued an injunction against Plaintiff's counsel and his law firm "from filing future complaints in the Western District of Texas asserting a claim of patent infringement without the advance permission from a judge of the Western District of Texas, the Fifth Circuit, or a delegee thereof." *mCom IP, LLC v. Cisco Sys., Inc., Cause No. 6:22-cv-261-ADA*, Dkt. No. 78, at 17 (W.D. Tex. Dec. 18, 2025) ("Injunction", attached hereto as Exhibit 1). The Injunction emphasized that despite numerous sanctions against counsel, he "continues the cycle of filing a patent case, offering a nuisance settlement, and eventually voluntarily dismissing the case when the burden shifts back to his client." Injunction at 15-16. The Injunction was intended "in theory, [to] require Mr. Ramey to conduct a proper pre-suit investigation, protecting the rights of innocent defendants and the Western District of Texas." Injunction at 16.

On January 5, 2026, Plaintiff's counsel requested approval from Judge Albright to file the present case in the Western District of Texas. Ex. 2[2] at 1-6. On January 8, 2026, Judge Albright "reviewed the original complaint…and the corresponding claim chart" and held that counsel's "request to file the complaint is denied." *Id*. at 1. Undeterred, on February 27, 2026, Plaintiff and its counsel filed the present lawsuit in this District—a duplicate of the suit Plaintiff's counsel was denied filing in the Western District of Texas. Although the complaint provided to Judge Albright

---

[2] Exhibit 2 is email correspondence submitted by Plaintiff's counsel to the Federal Circuit on appeal of the Injunction.

in the Western District is not available for comparison, the claim chart filed here is identical in every respect to one Judge Albright reviewed before denying Plaintiff's counsel leave to file. *Compare* Ex. 2 at "Exhibit B" (pdf page 10-32) (claim chart submitted to the Western District of Texas), *with* Dkt. 1-2. The inescapable conclusion is that Plaintiff is pressing the very same infringement theories that Judge Albright already refused to entertain.

Here, the Complaint lacks any factual allegations that state a plausible claim of infringement. Paragraphs 3-5, for example, allege jurisdiction and venue. Dkt. 1. The next two paragraphs (6-7) relate to the patent. *Id.* Paragraph 8 offers the conclusion that defendant "maintains, operates, and administers systems, products, and services that conduct offline transactions that use a barcode as a method of personal identification that infringes…," but offers no meaningful facts that support that conclusion. *Id.* Paragraph 9 offers no facts but states that "[s]upport for the allegations of infringement may be found int eh chart attached as Exhibit B." *Id.* Paragraphs 10 and 11 purport to allege inducement (¶10) and contributory infringement (¶11) but refer to the previous allegations in support of direct infringement. *Id.*[3] The remaining paragraphs 13-20 are under the title "Conditions Precedent" and relate to Plaintiff not selling products (¶13) and Plaintiff and its predecessors-in-interest having settled with others and the marking statute (¶¶14-20).

The accompanying claim chart (Exhibit B) (Dkt. 1-2) ("Chart") fares no better. The Chart cites disparate references purportedly from the Walgreens website and the Google Play store without connection or adequate explanation. For example, in connection with limitation (a) of claim 1, Plaintiff contends a personal code obtained from the Google play store

---

[3] Paragraph 12 relates to damages.

(["DW|1|201203365943052|9604318913-wallet-m0415|0.00"]) is directly applied by Walgreens without any supporting evidence or further support or contentions.

> *(a) providing a **personal code** ["DW|1|201203365943052|9604318913-wallet-m0415|0.00"] to a person for their use to **purchase goods** ["transaction"].*
>
> *For example, Walgreens may give a person a digital wallet identifier (such as "DW|1|201203365943052|9604318913-wallet-m0415|0.00") to use when completing a transaction.*

> **personal code**
>
> *DW|1|201203365943052|9604318913-wallet-m0415|0.00*
>
> *<https://play.google.com/store/search?q=walgreen&c=apps>* © 2025
>
> **purchase goods**
>    Yes, but Walgreens Cash rewards will not be earned on the portion of
>    a transaction that was paid for using redemption dollars or store
>    credit..
>
> *<https://www.walgreens.com/topic/help/mywalgreens.jsp>* © 2025

Chart at 5. Similarly, limitation 1(b) requires a "User ID Barcode …include[] at least one special character," yet the evidence relied on in the Chart is a barcode with horizontal lines and no characters at all:



Chart a 5. Additionally, the Chart demonstrates that the claims require multiple actors (*see, e.g.,* limitation (a) "providing a personal code to a person for their use to purchase goods" (allegedly performed by the system (Chart, at 5) and limitation (f) "conducting purchases at vendors (allegedly performed by the customer doing the purchasing (Chart, at 11-16)). The Chart, however,

fails to plead facts that indicate whether or how Walgreens allegedly controls its customers or other joint activity to establish direct infringement by multiple actors.

**ARGUMENT**

I.    **THIS CASE SHOULD BE DISMISSED BECAUSE IT WAS FILED IN THIS DISTRICT TO CIRCUMVENT AN INJUNCTION ORDER FROM THE WESTERN DISTRICT OF TEXAS**

Plaintiff's counsel is required to obtain approval prior to filing patent infringement cases in the Western District of Texas. *mCom IP, LLC v. Cisco Sys., Inc.,* Cause No. 6:22-cv-261-ADA, Dkt. No. 78, at 17 (W.D. Tex. Dec. 18, 2025) (Ex. 1). As discussed, Plaintiff and its counsel sought such approval, but it was denied. *See* Ex. 2. Plaintiff then filed the present case in this District thus circumventing the injunction. These actions, filing an action in one forum to avoid the pre-filing injunction entered in another, warrant dismissal. *See In re Fillbach*, 223 F.3d 1089, 1090 (9th Cir. 2000) (noting court has authority to dismiss where litigant filed in one forum to avoid a vexatious litigant order in another forum); *Whitehead v. Twentieth Century Fox Film Corp.,* No. Civ.A. 05-1462 GK, 2005 WL 3275905, at *1 (D.D.C. Aug. 29, 2005) (dismissing the plaintiff's claim that was brought in the Superior Court of the District of Columbia because even as the plaintiff knew his copyright claim could only be brought in federal court, he filed in state court to avoid a prior injunction issued in the District Court for the District of Columbia, thereby violating the "intent and spirit" of the injunctive order).

The Injunction included the following findings (all emphasis added):

- "While the *plaintiffs may change*, the *sole common denominator is Mr. Ramey*—including his settlement offers and his failure to conduct proper pre-suit investigations. This conduct across similar patent cases establishes a pattern of, at the least, filing harassing lawsuits[;]"

- "Mr. Ramey's *consistent* failure to conduct proper pre-suit investigations and attend hearings meets factor two. Mr. Ramey's conduct shows he lacked a good-faith basis to bring multiple lawsuits absent an intent to harass for nuisance settlements[;]"

5

- "No such presumption [of any good faith basis to bring a lawsuit] exists, which is why litigants, and their counsel, must perform adequate pre-suit investigations[;]"

- "Mr. Ramey's conduct burdens the court and other parties," noting that even "the short life of [a] case" burdens the court and costs incurred on other parties burden such parties; and

- "Mr. Ramey has filed over 600 patent litigation lawsuits since 2021 in the Western District of Texas, clogging the Court's docket and wasting valuable resources."

*See* Injunction at 14-15. The injunction further highlights nine instances of cases "exceptional" enough to warrant § 285 sanctions against counsel, but notes that counsel "continues the cycle of filing a patent case, offering a nuisance settlement, and eventually voluntarily dismissing the case when the burden shifts back to his client." *Id.* at 15. This conduct led Judge Albright to conclude "that *monetary sanctions and prior court orders have not stopped Mr. Ramey's conduct[,]"* (*id.* at 15-16 (emphasis added)), and to issue the pre-filing injunction that will "in theory, require Mr. Ramey to conduct a proper pre-suit investigation*, protecting the rights of innocent defendants* and the Western District of Texas." *Id.* at 16.

But rather than correct the deficiencies that led to Judge Albright's denial, Plaintiff simply refiled its lawsuit in this District. Such conduct is improper. *See*, *e.g.*, *Robinson v. Vigorito, Barker, Patterson, Nichols & Porter, LLP*, No. 19-CV-2914 (WFK)(LB), 2019 WL 13417190, at *1 (E.D.N.Y. July 31, 2019) (noting a party "may not circumvent the filing injunction entered by [another court] by filing duplicative frivolous or malicious claims against similar defendants in other district courts, including this one").

Dismissal is appropriate here and should be granted.

## II.   THIS CASE SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR DIRECT INFRINGEMENT

Plaintiff's claims should also be dismissed because its Complaint and accompanying chart fail to state a plausible claim for direct infringement.

### A.   Legal Standard

To state a claim for infringement, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If there is only a mere "possibility that the plaintiff's claims are true," that is insufficient to state a claim for relief. *Chapterhouse, LLC v. Shopify, Inc*., No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *1 (E.D. Tex. Dec. 11, 2018) (citing *Iqbal*, 556 U.S. at 678). Though a plaintiff "need not prove its case at the pleading stage," "a plaintiff cannot assert a plausible claim for infringement . . . by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am*., 4 F.4th 1342, 1353, 1356 (Fed. Cir. 2021) (quotations omitted). The Complaint must also "place the alleged infringer on notice of what activity . . . is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.,* 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quotations omitted); *Chapterhouse*, 2018 WL 6981828, at *2.

To the extent pictures (*e.g.*, screenshots) are relied on, "Plaintiff must further allege *how* the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find the *Iqbal/Twombly* standard is met." *Chapterhouse*, 2018 WL 6981828, at *2 (emphasis added). "[P]ictures and generic product descriptions that are not tied to any claim limitations" typically do not satisfy the *Iqbal* standard. *See*, *e.g.*, *Golden v. Intel*

7

*Corp.*, No. 2023-1257, 2023 WL 3262948, at *2 (Fed. Cir. May 5, 2023); *Chapterhouse*, 2018 WL 6981828, at *2.

> **B.     The Complaint and Accompanying Claim Chart Fail to State a Plausible Claim for Direct Infringement.**

As discussed above, only two paragraphs of the Complaint arguably contain allegations (factual or otherwise) relating to direct infringement. Paragraph 8 states a conclusion "[d]efendant maintains, operates, and administers systems, products, and services that conducting [sic] offline transactions that use a barcode as a method of personal identification that infringes one or more of claims 1-3 of the '689 patent,[4] literally or under the doctrine of equivalents." Dkt. 1. There are no factual allegations relating to *how* the particular system/product/service allegedly infringes the patent or even identifying an actual allegedly infringing system/product/service. There is also no discussion of the accused method at all, even though the '689 patent contains only method claims. Paragraph 9 fares no better as it simply defers to the claim chart of Ex. B (Dkt. 1-2). The Complaint, therefore, fails to state a plausible claim for direct infringement.

The claim chart fails to fill the factual void as demonstrated below.

*Preamble: "A method for conducting offline electronic commerce transactions having a vendor barcode scanner and a vendor cash register comprising":*  For the preamble, the Chart recites the claim language and includes a screenshot purportedly from Walgreens website and a dictionary definition of the word "transaction." *See* Chart at 4-5. But the Chart offers no identification of the allegedly infringing method, or any explanation of how the method is allegedly practiced or who practices it.

---

[4] The only asserted patent is U.S. Patent No. 9,280,689. Because the patent was attached to the Complaint, we do not attach it here.

8

*1(a) "providing a personal code to a person for their use to purchase goods"*: For limitation 1(a), the Chart appears to contend that a personal code is obtained from the Google Play store, and includes a purported screenshot from the Walgreens website generally discussing cash rewards.

(a) providing a **personal code** ["DW|1|201203365943052|9604318913-wallet-m0415|0.00"] to a person for their use to **purchase goods** ["transaction"].

For example, Walgreens may give a person a digital wallet identifier (such as "DW|1|201203365943052|9604318913-wallet-m0415|0.00") to use when completing a transaction.

**personal code**

DW|1|201203365943052|9604318913-wallet-m0415|0.00

<https://play.google.com/store/search?q=walgreen&c=apps> © 2025

**purchase goods**
Yes, but Walgreens Cash rewards will not be earned on the portion of a transaction that was paid for using redemption dollars or store credit..

<https://www.walgreens.com/topic/help/mywalgreens.jsp> © 2025

Chart at 5. But the chart fails to plead how, or even whether, the personal code is actually "provid[ed] . . . to a person," how such a code is "for [] use to purchase goods," and identifies no mechanism, factual allegation, or evidence connecting the Google Play store code to any purchase functionality. Assuming a conclusion is not the same as offering proof of it.

*1(b) requires "**converting said personal code into barcode format** to form a User ID Barcode, said **User ID Barcode** corresponding to said personal code and **including at least one special character** to distinguish the barcode as a User ID Barcode from a product barcode."* Here, again the Chart fails to state a plausible claim for infringement in multiple ways.

9

(c) storing said **personal code** ["DW|1|201203365943052|9604318913-wallet-m0415|0.00"] in said **User ID Barcode** [SEE IMAGE of barcode] format by said person for use to **purchase goods** ["transaction"] and storing said **personal code** ["DW|1|201203365943052|9604318913-wallet-m0415|0.00"] in a **User Vendor Management Server** ["myWalgreens"] to permit purchases to be made at a vendor.

For example, Walgreens allows the person to store the identifier ("DW|1|201203365943052|9604318913-wallet-m0415|0.00") in the form of a User ID Barcode for use during transactions. The same identifier is also stored in the person's myWalgreens account, enabling the person to make purchases at a Walgreens store.



personal code

DW|1|201203365943052|9604318913-wallet-m0415|0.00

<https://play.google.com/store/search?q=walgreen&c=apps> © 2025

Chart at 5-7. First, the Chart fails to state how (or if) the personal code is "converted" into a barcode but simply states that a personal code exists and that a barcode may be used to pay. Next, the Chart fails to plead that the "User ID Barcode…include[es] at least *one special character*." As can be seen, the screen shot of a barcode included in the chart is merely a compilation of vertical lines—*there are no characters at all,* much less a "special character" as required by the claim and the specification.[5] And, although the Chart contends that the digital wallet identifier may include a special character and that "[t]his *User ID Barcode* corresponds directly to that identifier and *contains a special code-such as the prefix "DW"*-to distinguish it from regular product barcodes,"

---

[5] *See, e.g.,* '689 patent at 5:64-6:14 ("The *User ID Barcode* is derived from the conventional barcode and *includes* a *special character,* or characters, to identify it as a personal ID code and to distinguish it from barcodes that may incorporate data relating to products or goods"), 10:9-18 ("The Vendor Server 40 detected the *special character in the User ID Barcode* indicating that the barcode does not represent any products for sale and it is the User ID Barcode, the Vendor Server 40 *sends the User ID Barcode* together with the transaction data to the UVM Server 80, step 10") (emphasis added).

10

(*see* Chart at 6), the identified barcode does not include any "special code" or the "DW" prefix as stated in the contentions. Accordingly, the evidence does not support the articulated allegation.

Defendant wrote to Plaintiff on May 20, 2026 regarding this exact issue and requesting dismissal of the present suit. *See* Ex. 3. Plaintiff did not respond.

*1(c) "storing said personal code in said User ID Barcode **format by said person** for use to purchase goods and **storing said personal code in a User Vendor Management Server** to permit purchases to be made at a vendor"*: For this limitation, the Chart recites the claim language, includes by reference the prior pictures of a "personal code" and "User ID barcode," and adds the phrase "[f]or example, Walgreens allows the person to store the identifier" in "myWalgreens," which is the purported User Vendor Management Server.

> (c) storing said **personal code** ["DW|1|201203365943052|9604318913-wallet-m0415|0.00"] in said User ID Barcode [SEE IMAGE of barcode] format by said person for use to **purchase goods** ["transaction"] and storing said **personal code** ["DW|1|201203365943052|9604318913-wallet-m0415|0.00"] in a **User Vendor Management Server** ["myWalgreens"] to permit purchases to be made at a vendor.
>
> For example, Walgreens allows the person to store the identifier ("DW|1|201203365943052|9604318913-wallet-m0415|0.00") in the form of a User ID Barcode for use during transactions. The same identifier is also stored in the person's myWalgreens account, enabling the person to make purchases at a Walgreens store.

Chart at 8. But the Chart fails to include factual allegations regarding *how* a user (and not the system) would create any barcode at all, much less how a person would store a personal code in a barcode. Also, the screen shot indicates that myWalgreens is an account, not a server.

> **User Vendor Management Server**
> You can see your current Walgreens Cash rewards balance by logging in to your account at myWalgreens. or on the Walgreens mobile app. You can also view your current Walgreens Cash rewards balance on your last Walgreens receipt or by calling (855) 225-0400.

Chart at 9. In short, the Chart does not explain Plaintiff's theory of infringement regarding infringement of the method, *i.e.*, how the alleged personal code is alleged stored in the User ID

11

Barcode format by the person and/or how that personal code is stored in the User Vendor Management Server, whatever that may be.

*1(d) "establishing a User Account in a User Vendor Management Server corresponding to said personal code"*: The deficiencies are similar for this element. For example, the Chart does indicate how the personal code allegedly obtained from the Google Play store is associated with any User Account or Vendor Management Server. Chart at 10.

The remaining limitations each contain similar deficiencies. For example, limitation 1(f) requires "conducting purchases at vendors each having a vendor server (purportedly satisfied by myWalgreens). But Plaintiff previously identified myWalgreens as the User Vendor Management Server, and the screenshot indicates that myWalgreens is a user account, not a server. Limitation 1(g), likewise, requires "detecting the User ID Barcode and forwarding the ID Barcode and purchase price to said User Vendor Management Server." But the purported evidence repeats the evidence from the earlier limitations, save for providing some pricing information. Chart at 16-18. Finally, limitation 1(h), requires "comparing the purchase price with the funds in said User Vendor Management Server account to determine if there are available funds and if there are, sending an approval signal to the vendor server." Here, the Chart identifies myWalgreens as the User Vendor Management Server and as the User Vender Manager Server account and a digital receipt as the approval signal, with no explanation how myWalgreens can be both a server and an account, and with no explanation how a receipt for a transaction that has apparently occurred can be approval for the transaction to occur in the first place. Chart at 18-20.

Failure to adequately plead a single limitation requires dismissal. Here, Plaintiff fails to adequately plead numerous limitations. To adequately plead direction infringement, Plaintiff must do more than recite screenshots and claim language, it must allege how the screenshots meet the

12

text of the exemplary claim. *See*, *e.g.*, *Chapterhouse*, 2018 WL 6981828, at \*2; *Golden*, 2023 WL 3262948, at \*2. Dismissal should be granted.

### C.    Plaintiff Fails to Sufficiently Plead Divided or Joint Infringement.

The Chart demonstrates that multiple actors are required to perform the claim method. For example, as discussed above, limitation 1(a) requires that a personal code be provided "to a person for their use to purchase goods" by some entity while limitation 1(f) requires "conducting purchases at vendors…," which is presumably done by the person/customer. The Chart also indicates that limitations (d), (g), and (h) are allegedly performed by Walgreens. Plaintiff's Chart thus demonstrates a theory of joint infringement. But because neither the Complaint nor the Chart contain allegations (let alone factual allegations) that Walgreens is "a joint enterprise" with its customers and/or "directs or controls" its customers' activities as required by the Federal Circuit, dismissal is proper. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) ("[D]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by *or attributable to* a single entity.") (emphasis added)); *see also Lyda v. CBS Corp.,* 838 F.3d 1331, 1340 (Fed. Cir. 2016*)*. (affirming motion to dismiss where divided infringement was not adequately pled); *Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 2:24-cv-00049-JRG, 2024 WL 4870768, at \*3 (E.D. Tex. Nov. 21, 2024) (dismissing at the pleading stage where "the Complaint does not plausibly plead a claim for divided infringement" and "fails to allege the existence of a joint enterprise"); *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at \*4 (W.D. Tex. Feb. 11, 2020) (dismissing at the pleading stage where "[d]espite apparently relying on the acts of multiple entities as allegedly performing the steps of the claimed method (and for some no actor is identified), the Complaint alleges no facts to support a claim for joint infringement").

13

### III.   PLAINTIFF FAILS TO STATE A CLAIM FOR INDIRECT INFRINGEMENT

"[I]t is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018). Because Plaintiff fails to allege a plausible claim of direct infringement, its indirect infringement allegations also fail.

Plaintiff's induced infringement allegation also fails because Plaintiff fails to allege intent. "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Nalco*, 883 F.3d at 1355 (alteration in original) (quoting *Lifetime Indus.*, 869 F.3d at 1379). Here, because Plaintiff only pleads knowledge of the patent from at least the date the lawsuit was filed, as opposed to pleading intent and providing a factual basis supporting such alleged intent, the inducement claim should be dismissed.

Plaintiff, likewise, fails to sufficiently allege contributory infringement because Plaintiff fails to plead any facts supporting the non-existence of substantial non-infringing uses for the allegedly infringing technology, to the extent it is possible to identify the accused technology based on the Complaint and Chart. Instead, Plaintiff simply states "there are no substantial noninfringing uses for Defendant's products and services." Dkt. 1 at ¶11. A conclusion without supporting factual allegations is not entitled to deference. *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). These allegations should, therefore, be dismissed.

### IV.   DISMISSAL WITH PREJUDICE IS WARRANTED AS A SANCTION

Plaintiff's and its counsel's circumvention of a pre-filing injunction by filing a lawsuit already found to be facially deficient by Judge Albright warrants a finding that this case is

exceptional and a with prejudice dismissal.

An exceptional case is "one that stands out from others with respective to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). When assessing exceptionality, courts consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstance to advance considerations of compensation and deterrence." *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1277 (Fed. Cir. 2018). This court also has authority to impose sanctions under 28 U.S.C. § 1927 and its inherent authority.

The Court should find this case exceptional. As discussed above, rather than amend the Complaint to correct the deficiencies and refile the suit in the Western District of Texas, Plaintiff filed the deficient Complaint in this District. This Texas two-step alone makes this case exceptional. *See*, *e.g.*, *Chamberlain Grp., Inc. v. Techtronic Indus. Co*, 315 F. Supp. 3d 977, 1013-1014 (N.D. Ill. 2018) (finding circumvention of an injunction sanctionable where defendant engaged in actions during the five-day gap between the granting of the injunction and the court entering it that would have otherwise violated it);[6] *see also Cameras Onsite, LLC v. Digital Mgmt. Sols., Inc.*, No. CV H-16-1172, 2017 WL 6598556, at *7 (S.D. Tex. Apr. 3, 2017) (awarding attorneys' fees where "defendants actively sought to circumvent [an] injunction"). Here, the conduct is more egregious than in *Chamberlain*. Plaintiff and counsel did not merely exploit a procedural gap. Plaintiff was denied permission to file, but rather than amend the Complaint to

---

[6] This case was reversed in part on other grounds, finding the '275 patent ineligible for patent protection under § 101, but accordingly vacating the district court's injunction and award of enhanced damages and "remand[ing] to the district court for reconsideration of enhanced damages and attorney fees with respect to only the '966 patent." *See Chamberlain Grp., Inc. v. Techtronic Indus. Co.,* 935 F.3d 1341, 1345 (Fed. Cir. 2019).

attempt to fix the deficiencies it simply filed in another Court thus forcing Walgreens and this Court to expend resources in direct contradiction of the intent and purpose of Judge Albright's injunction. *See* Ex. 1 at 15 ("[Counsel's] conduct burdens the court and other parties," and noting that even "the short life of [a] case" burdens the court and the parties); *id* at 14-15 (castigating counsel's conduct filing suits in the Western District of Texas); *see also Whitehead*, 2005 WL 3275905, at *1 (dismissing the plaintiff's claim that was brought in one forum that violated the "intent and spirit" of an injunctive order in another forum). Dismissal with prejudice with respect to this Plaintiff (who presumably was informed of Judge Albright's denial and presumably endorsed the refiling of the same lawsuit in this District) is thus appropriate as is an award of fees to deter this misconduct and protect the integrity of the judicial process.

## CONCLUSION

For the foregoing reasons, Walgreens respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice and award Walgreens its attorneys' fees and costs.

16

Dated: May 28, 2026

Respectfully submitted,

*/s/ Mark C. Nelson*
Mark C. Nelson (lead counsel)
TX Bar No. 00794361
David Lisch
TX Bar No. 24077179
Juanita DeLoach
TX Bar No. 24064218
**BARNES & THORNBURG LLP**
2121 North Pearl Street, Ste. 700
Dallas, TX 75201
Tel: (214) 258-4200
Fax: (214) 258-4199
mark.nelson@btlaw.com
david.lisch@btlaw.com
jdeloach@btlaw.com

**ATTORNEYS FOR
DEFENDANT WALGREEN CO.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2026 a copy of the foregoing document was served via the Court's ECF system on all parties who are deemed to have consented to electronic service.

*/s/ Mark C. Nelson*
Mark C. Nelson

17