## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **WOLVERINE BARCODE IP, LLC,** | |
| **Plaintiff,** | **Civil Action No. 2:26-cv-00153** |
| | **(Lead Case)** |
| **v.** | |
| | **PATENT CASE** |
| **WALGREEN CO.,** | |
| | **JURY TRIAL DEMANDED** |
| **Defendant** | |
| **v.** | |
| | **Civil Action No: 2:26-cv-00021** |
| **JAMBA JUICE, LLC,** | **(Member Case)** |
| **Defendant.** | |

## DEFENDANT JAMBA JUICE, LLC'S
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................... 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 2

III.    STATEMENT OF THE ISSUE....................................................................................... 2

IV.     STATEMENT OF THE FACTS ..................................................................................... 2

V.      LEGAL STANDARD.................................................................................................... 5

VI.     ARGUMENT................................................................................................................. 6

        A.      Wolverine Barcode Fails to Plead Direct Infringement........................................ 6

VII.    CONCLUSION.............................................................................................................. 7

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015)......................................................................................6

*ALD Soc. LLC v. Verizon Commc'ns, Inc.*,
   No. WA-22-CV-1011-FB, 2023 WL 11915724 (W.D. Tex. Sept. 30, 2023) .........................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................5

*Cuvillier v. Sullivan*,
   503 F.3d 397 (5th Cir. 2007) .........................................................................................5

*Desenberg v. Google, Inc.*,
   392 F. App'x 868 (Fed. Cir. 2010) .................................................................................6

*Laitram Corp. v. Rexnord, Inc.*,
   939 F.2d 1533 (Fed. Cir. 1991)......................................................................................6

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017)....................................................................................5, 6

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
   No. CV 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016).............................................5

*Ruby Sands LLC v. Am. Nat'l Bank of Texas*,
   No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) ............................1, 8

*Schumer v. Lab'y Computer Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002).......................................................................................6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......................................................................................................5, 6

2

## I.    INTRODUCTION

The Court should dismiss Wolverine Barcode's Amended Complaint. Jamba already filed one motion to dismiss this case because Wolverine Barcode's claims require "conducting purchases at vendors . . . wherein each purchase includes scanning product barcodes including product price," and Wolverine Barcode did not plausibly allege that Jamba's locations scan product barcodes. In its Motion, Jamba explained that in its original Complaint, Wolverine Barcode pointed to a Jamba fruit snack package sold on Amazon—not in Jamba's stores. *Id.* Had Wolverine Barcode conducted any pre-suit investigation, such as by visiting the Jamba location ten minutes away from its counsel's office, it would know that Jamba does not scan product barcodes in-store.

In response to Jamba' Motion, Wolverine Barcode amended its Complaint. *See* Dkt. 17. Wolverine Barcode left its claim charts unchanged but added several paragraphs to the body of the Complaint itself, purporting to bolster its direct and indirect infringement allegations. *Id.* ¶¶ 9–32. The added paragraphs do not cure the deficiency Jamba identified in its Motion. Wolverine Barcode alleges only in conclusory fashion that "[t]he Jamba POS is configured to scan product barcodes encoding individual menu items along with their prices[.]" *Id.* ¶ 23. While Wolverine Barcode identifies the "pumpkin smash" and "pumpkin pie crunch" smoothies shown in its claim chart, neither the Complaint nor the claim chart shows that those products have barcodes that can be scanned at the point-of-sale, which they cannot. "[T]he Court is left to wonder whether [Wolverine Barcode] performed a thorough pre-suit investigation, as required by the Federal Rules, to craft a plausible infringement theory before filing its complaint." *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at \*4 (E.D. Tex. June 28, 2016). Wolverine Barcode fails to plausibly allege direct infringement. The Court should dismiss Wolverine Barcode's Amended Complaint and should do so with prejudice.

1

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On January 9, 2026, Wolverine Barcode filed its Complaint, alleging that Jamba infringes claims 1–3 of the '689 Patent. Dkt. 1 (-021 case). Jamba filed a Motion to Dismiss on April 13, 2026, arguing that Wolverine Barcode failed to plausibly allege direct and indirect infringement. Dkt. 9 (-021 case). Wolverine Barcode responded to Jamba's Motion on April 28, Dkt. 12 (-153 case), but then filed an Amended Complaint on May 13, Dkt. 17.

## III.     STATEMENT OF THE ISSUE

Wolverine Barcode has not plausibly alleged direct infringement, because its Complaint does not plausibly allege that Jamba meets several claim limitations. Should the Court dismiss Wolverine Barcode's Complaint?

## IV.     STATEMENT OF THE FACTS

The '689 Patent describes "the present invention" as relating to "offline commerce transactions using the user ID Barcode as the user identifier for purchasing goods priced at micro payment or non-micro payment level [*sic*] using the fund or credit limit available at the user's account in the server identified as a User Vendor Management Server (UVM)." '689 Patent at 1:17–21. According to the patent's background section, it is impractical for vendors to accept credit card payments for "micro payments" (e.g., five or ten cents) because the processing cost is too high. *Id.* at 1:26–31. To overcome this problem, the '689 Patent describes a method in which users may use a barcode (on a smartphone or credit card) associated with a user account that has been preloaded with funds to facilitate payments at participating vendors without involving a third party to process those transactions. *Id.* at 2:34–3:50.

The '689 Patent has three claims, one independent claim and two dependent claims, all of which are method claims. '689 Patent, cls. 1–3. Independent claim 1, the only claim Wolverine Barcode charted, claims the following method:

2

1. A method for conducting offline electronic commerce transactions having a vendor barcode scanner and a vendor cash register comprising:

   (a) providing a personal code to a person for their use to purchase goods;

   (b) converting said personal code into barcode format to form a User ID Barcode, said User ID Barcode corresponding to said personal code and including at least one special character to distinguish the barcode as a User ID Barcode from a product barcode;

   (c) storing said personal code in said User ID Barcode format by said person for use to purchase goods and storing said personal code in a User Vendor Management Server to permit purchases to be made at a vendor;

   (d) establishing a User Account in a User Vendor Management Server corresponding to said personal code;

   (e) depositing funds in said User Account to establish a credit limit;

   (f) conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User ID Barcode with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server;

   (g) detecting the User ID Barcode at the vendor server and forwarding the ID Barcode and purchase price to said User Vendor Management Server;

   (h) comparing the purchase price with the funds in said User Vendor Management Server to determine if there are available funds within the credit limit in the User Vendor Management Server account, and if there are, sending an approval signal to the vendor server;

   (i) forwarding the approval signal to the vendor cash register; and

   (i) [*sic*] repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode.

'689 Patent, claim 1.

As the claim language itself recites, certain steps—like "(f) conducting purchases at vendors"—are performed by customers, and other steps—like "(a) providing a personal code to a person for their use to purchase goods"—are not performed by customers. Wolverine Barcode's allegations are vague and inconsistent as to whether Jamba or a Jamba customer directly infringes

3

the asserted '689 Patent claims or how they are infringed.

The claim chart attached as Exhibit B to the Amended Complaint fails to resolve the issue.

For some steps Wolverine Barcode points to acts allegedly performed by Jamba Rewards:

| Step 1(a) | *For example, Jamba gives a person a unique digital code — 79b228b78f96e33902f8060a04d41841bf046652PUNCHH— that the person can use to buy Jamba products.* |
|---|---|
| Step 1(c) | *For example, Jamba allows the person to store the code (79b228b78f96e33902f8060a04d41841bf046652PUNCHH) in the form of a User ID Barcode on their device so it can be used to buy Jamba products. At the same time, Jamba also stores this same code on its servers, so that purchases can be verified and processed electronically when the person buys products from a Jamba vendor.* |
| Step 1(d) | *For example, Jamba sets up a Jamba Rewards Account on its servers, and this account is linked to the unique code(79b228b78f96e33902f8060a04d41841bf046652PUNCHH).* |
| Step 1(g) | *For example, Jamba detects the User ID Barcode at its server and then records and forwards both the User ID and the purchase amounts (for example, $7.19, $8.69) to the server for processing.* |
| Step 1(h) | *For example, Jamba compares the purchase amounts (for example, $7.19, $8.69) with the available points and rewards credits in the customer's account on the server.*<br><br>• *If there are enough credits, the system authorizes the transaction and sends a receipt to the server.* |

Dkt. 17-2 at 5, 8–9, 12, 19–25 (highlighting added). For other steps, the claim chart identifies acts

performed by a customer:

| Step 1(f) | *For example, Jamba allows purchases at vendors, each of which has a server.*<br><br>• *During each purchase, the cash register scans both the product barcodes (for example, $7.19, $8.69) and the customer's User ID Barcode.*<br>• *The scanned information — both product details and the User ID — is then sent to Jamba's server to process the transaction.* |
|---|---|

Dkt. 17-2 at 14 (highlighting added).

Wolverine Barcode fails to provide sufficient explanation of its infringement theory (regardless of the actor(s) involved) for several claim elements and only parrots the claim language or ignores it altogether.

## V.     LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

For a Complaint to survive a motion to dismiss, it must set out "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Federal Circuit "precedent requires that a complaint place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013)). A claim for direct infringement requires plausible allegations that the accused products practice each of the limitations found in at least one asserted claim. *Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. CV 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (conducting limitation by limitation analysis). "The failure to meet a single

5

limitation is sufficient to negate infringement of [a] claim." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

"Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Failure to sufficiently plead divided infringement is grounds for dismissal under Rule 12. *Desenberg v. Google, Inc.*, 392 F. App'x 868, 872 (Fed. Cir. 2010).

## VI.    ARGUMENT

### A.    Wolverine Barcode Fails to Plead Direct Infringement

Wolverine Barcode's direct infringement allegations are implausible. To survive a 12(b)(6) motion to dismiss, a party claiming direct infringement must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lifetime*, 869 F.3d at 1376 (quoting *Iqbal*, 556 U.S. at 678). This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. However, "[a] method claim is infringed only by one practicing the patented method." *Schumer v. Lab'y Computer Sys., Inc.*, 308 F.3d 1304, 1309 n.3 (Fed. Cir. 2002).

Wolverine Barcode has not plausibly alleged that Jamba is practicing the patented method. Claim 1 describes two different types of barcodes that are used in the method: "a User ID Barcode," which identifies a user, and a "product barcode" which is located on a product. Dkt. 17-2 at 6. Claim limitation 1.6 similarly requires "conducting purchases at vendors . . . wherein each purchase includes scanning product barcodes including product price and said User ID Barcode with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server." *See, e.g.*, Dkt. 17-2 at 14.

While Wolverine Barcode appears to point to Jamba's rewards program for the "User ID Barcode," it points to Jamba Fruit Snacks from Amazon for the "product barcode," as the URL

6

even says "Amazon." *See, e.g.*, Dkt. 17-2 at 8. Wolverine Barcode does not allege that Jamba fruit snacks are bought at Jamba locations, does not allege that Jamba point-of-sale systems scan the barcode, and does not allege that Jamba customers can buy Jamba fruit snacks with Rewards points. Jamba point-of-sale systems do not scan barcodes—the item is selected on the point-of-sale system. Further, Jamba reward points cannot be used to purchase "grab-n-go" items such as fruit snacks or bottled drinks.

In its Amended Complaint, Wolverine Barcode attempted to remedy this deficiency by stating that "[t]he Jamba POS is configured to scan product barcodes encoding individual menu items along with their prices[.]" Dkt. 17 ¶ 23. While Wolverine Barcode identifies the "pumpkin smash" and "pumpkin pie crunch" smoothies shown in its claim chart for a different limitation, the claim chart does not show that those products have barcodes that can be scanned at the point-of-sale. They do not. Wolverine Barcode cannot meet its burden under *Twombly* and *Iqbal* merely by reciting the claim elements and stating that Jamba infringes. *See ALD Soc. LLC v. Verizon Commc'ns, Inc.*, No. WA-22-CV-1011-FB, 2023 WL 11915724, at *3 (W.D. Tex. Sept. 30, 2023) (dismissing claim brought by Ramey LLP because "The *Iqbal*/*Twombly* cannot be met, however, by 'reciting the claim elements and merely concluding that the accused product has those elements' or by 'pleading facts that are inconsistent with the requirements of its claims.'") (internal citation omitted). This is what Wolverine Barcode has done—without performing an investigation, it has simply concluded that Jamba point of sale systems scan product barcodes. They do not, and Wolverine Barcode points to no support for its conclusion that they do. Thus, Wolverine Barcode does not plausibly allege that Jamba directly infringes claim 1 of the '689 Patent, and it cannot.

## VII.    CONCLUSION

Wolverine Barcode has already had one chance to amend. It could have performed a sufficient pre-suit investigation, learned that Jamba does not practice the method, and withdrawn

7

its lawsuit. Instead, it chose to reassert the same claims while failing to cure the deficiencies in its original Complaint. Wolverine Barcode has not crafted a plausible theory of direct infringement by Jamba. *Ruby Sands*, 2016 WL 3542430, at *4 ("[T]he Court is left to wonder whether [Wolverine Barcode] performed a thorough pre-suit investigation, as required by the Federal Rules, to craft a plausible infringement theory before filing its complaint."). The Amended Complaint should be dismissed with prejudice.

Dated: June 4, 2026                      Respectfully submitted,

By:  */s/ Riley J. Green*
Neil J. McNabnay
Texas Bar No. 24002583
mcnabnay@fr.com
Lance E. Wyatt
Texas Bar No. 24093397
wyatt@fr.com
Riley J. Green
Texas Bar No. 24131352
rgreen@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone (214) 747-5070
Facsimile (214) 747-2091

**COUNSEL FOR DEFENDANT
JAMBA JUICE, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on June 4, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ Riley J. Green
Riley J. Green

9