**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WOLVERINE BARCODE IP, LLC, | Civil Action No. 2:26-cv-00153-JRG (Lead Case) |
| Plaintiff, | |
| | Civil Action No. 2:26-cv-00021-JRG (Member Case) |
| v. | |
| WALGREEN CO., | JURY TRIAL DEMANDED |
| Defendant. | |
| v. | |
| JAMBA JUICE, LLC, | |
| Defendant. | |

**PLAINTIFF'S SURREPLY TO DEFENDANT JAMBA JUICE, LLC'S
REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Jamba's Reply confirms that the motion rests on a factual denial, not a pleading defect. The Reply says Jamba is not asking the Court to decide whether Jamba scans product barcodes at the Rule 12 stage, but it then asks for dismissal with prejudice because "Jamba locations do not scan a product barcode." Dkt. 36 at 1-3. That is the merits dispute. It cannot be resolved by re-labeling Wolverine's contrary allegations as "conclusory."

The First Amended Complaint does not merely recite "product barcode." It identifies the accused Jamba App, Jamba Rewards Program, Jamba POS, vendor server, User Vendor Management Server, and checkout workflow. Dkt. 17 ¶¶ 19-26, 34-47. It alleges that the Jamba POS includes a barcode scanner connected to the cash register and back-end servers; that the POS scans product barcodes encoding individual menu items and prices; that the same register scans the customer-presented User ID Barcode; and that both types of information are transmitted to Jamba's vendor server. Id. ¶¶ 23-24, 42-45. Those allegations must be accepted as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I. THE REPLY MISCHARACTERIZES THE FAC AND THE ROLE OF EXHIBIT B.

The Reply says Wolverine "only said that scanning is done." Dkt. 36 at 3. The FAC says more. Paragraph 23 pleads the concrete accused hardware and configuration: a Jamba POS "consisting of, among other components, a barcode scanner connected to a cash register and to Jamba's back-end servers," configured to scan "product barcodes encoding individual menu items along with their prices." Dkt. 17 ¶ 23. Paragraph 24 pleads what happens next: the POS transmits both the scanned product-barcode information and the scanned User ID Barcode to a Jamba vendor server. Id. ¶ 24. Paragraphs 42 through 45 plead the same product-barcode scanning, transmission, server detection, comparison, approval-signal, and cash-register forwarding steps on an element-by-element basis. Id. ¶¶ 42-45.

1

Jamba's contrary assertion that its stores do not scan product barcodes is not evidence properly credited on Rule 12. Dkt. 36 at 1-3. The internal configuration of the Jamba POS, including whether it reads a printed product barcode, an electronic product barcode, an item-specific code, a menu-item barcode, a PLU/SKU-coded equivalent, or another product-code implementation, is information in Jamba's possession. Rule 8 does not require Wolverine to prove those implementation details before discovery.

Nor does Exhibit B defeat plausibility. Jamba argues that Exhibit B discusses a receipt barcode while addressing a different limitation and does not show a barcode printed on a "pumpkin smash" or "pumpkin pie crunch." Dkt. 36 at 1-3. But the amended body of the complaint supplies the product-barcode allegations Jamba demanded after the first motion. Dkt. 17 ¶¶ 23-24, 42-45. An illustrative screenshot in Exhibit B does not erase those allegations, and nothing in Exhibit B affirmatively establishes that Jamba's POS cannot or does not scan product barcodes or product-code information at checkout.

## II. JAMBA'S "NO CLAIM CONSTRUCTION" ARGUMENT ASSUMES A CONSTRUCTION.

The Reply says there is no claim-construction dispute because Jamba has not proposed a formal construction for "product barcode." Dkt. 36 at 3. But Jamba's argument necessarily assumes one. Jamba asks the Court to require Wolverine to identify a visible barcode physically printed on a particular smoothie or menu item and scanned at the counter. Id. at 1-4. Claim 1 recites "scanning product barcodes including product price" at the vendor cash register; it does not, on its face, impose Jamba's additional physical-label requirement. Dkt. 17-1 at 26:45-54; Dkt. 17-2 at 3.

Jamba may later argue that "product barcode" should be limited to the kind of retail barcode it describes. Wolverine will dispute any construction that excludes product-code or menu-item barcode information scanned or read by the POS and transmitted to the vendor server. That is a

2

claim-construction and factual dispute, not a Rule 12 defect. The patent language Jamba quotes distinguishes User ID Barcodes from "barcodes that may incorporate data relating to products or goods." Dkt. 36 at 3-4; Dkt. 17-1 at 5:30-38. That distinction supports Wolverine's theory that Jamba's system handles different barcode or barcode-like data for product information and user identification. It does not, however, prove that the accused product-barcode information cannot satisfy claim 1.

### III. *BOT M8* DOES NOT SUPPORT DISMISSAL ON THIS RECORD.

*Bot M8* does not change the analysis. *Bot M8* held that a plaintiff may not simply parrot claim language and announce infringement. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-55 (Fed. Cir. 2021). Wolverine has not done that. Wolverine pleaded a specific accused retail transaction architecture and alleged how the challenged limitation is met by the Jamba POS and server workflow. Dkt. 17 ¶¶ 19-47.

The FAC is not internally contradictory in the way Jamba suggests. The fact that Exhibit B references receipt information and product identifiers does not refute the amended allegations that the Jamba POS scans product barcodes encoding menu items and prices. At most, Jamba identifies a dispute over which evidence best supports the product-barcode limitation and how the accused POS should be characterized after discovery. A complaint is sufficient when it identifies the asserted patent, the accused system, and facts making infringement plausible. *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379-80 (Fed. Cir. 2017).

### IV. THE AKAMAI AND INDIRECT-INFRINGEMENT ALLEGATIONS

Jamba says Wolverine's Akamai and indirect-infringement arguments are irrelevant because Jamba did not move on those grounds. *See* Dkt. 36 at 4. Plaintiff notes, with respect, that Defendant Jamba asks the Court to dismiss the entire FAC with prejudice. *Id.* at 5. Wolverine was

3

entitled to explain why the FAC plausibly pleads direct performance, attribution of any customer-side conduct, and why Counts II and III should not be dismissed based on a motion that does not separately address them.

The FAC pleads that all steps are performed by Jamba directly or by customers and other actors whose conduct is attributable to Jamba. Dkt. 17 ¶¶ 27-32. It also pleads that Jamba conditions rewards-program benefits on the customer's use of the Jamba App and presentation of the QR code, dictates the manner and timing of that presentation through the Jamba App and Rewards Terms, and uses its employees and agents to perform the scanning and checkout steps. Id. ¶¶ 26-32. The indirect-infringement counts plead post-suit knowledge, specific intent, affirmative instructions, material components, and no substantial non-infringing use. Id. ¶¶ 51-65. Jamba does not develop an independent attack on those allegations.

## V. CONCLUSION

The Reply does not identify a pleading defect. It identifies a factual dispute about Jamba's POS operation. Wolverine has pleaded a specific accused Jamba checkout architecture and has alleged that the Jamba POS scans product barcodes and the User ID Barcode and transmits that information for server-side processing. Dkt. 17 ¶¶ 23-24, 42-45. The Court should deny Jamba's motion. Alternatively, any dismissal should be without prejudice and with leave to amend.

Dated: July 9, 2026

Respectfully submitted,

**RAMEY LLP**

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
446 Heights Blvd., Suite 200
Houston, Texas 77007

4

Telephone: (713) 426-3923
Facsimile: (832) 900-4941
wramey@rameyfirm.com

**ATTORNEYS FOR PLAINTIFF WOLVERINE
BARCODE IP, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 9, 2026, a true and correct copy of the

foregoing document was served on all counsel of record via the Court's CM/ECF system.

*/s/ William P. Ramey, III*
William P. Ramey, III

5