**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| WOLVERINE BARCODE IP, LLC, | §<br>§<br>§ | Case No. 2:26-cv-00153-JRG<br>(Lead Case) |
| Plaintiff, | §<br>§<br>§ | Case No. 2:26-cv-00021-JRG<br>(Member Case) |
| v. | §<br>§ | |
| WALGREEN CO.<br>JAMBA JUICE, LLC | §<br>§<br>§ | |
| Defendants. | §<br>§<br>§ | |

**PLAINTIFF'S RESPONSE TO DEFENDANT WALGREEN CO.'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................................1

II.    LEGAL STANDARD...........................................................................................3

III.   DIRECT INFRINGEMENT .................................................................................4

       A. The FAC gives fair notice of the accused Walgreens systems and transaction
          workflow ........................................................................................................4

       B. Walgreens' element-by-element arguments ask the Court to Resolve factual and
          claim-construction disputes .........................................................................5

IV.    USER ID BARCODE AND SPECIAL CHARACTER.................................................8

V.     WALGREENS' DIVIDED-INFRINGEMENT ARGUMENT DOES NOT
       WARRANT DISMISSAL .....................................................................................10

VI.    INDIRECT INFRINGEMENT ...............................................................................12

VII.   WALGREENS' REQUEST FOR DISMISSAL WITH PREJUDICE BASED ON THE
       WESTERN DISTRICT ORDER SHOULD BE REJECTED ...................................13

VIII.  LEAVE TO AMEND .........................................................................................14

IX.    CONCLUSION .................................................................................................15

i

## TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) .................................................................................... 4, 10

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) (en banc) ................................................................ 3, 4, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 3

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ......................................................................................... 3, 8

*Chapterhouse, LLC v. Shopify, Inc.*,
   No. 2:18-cv-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ............................ 7

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015) .......................................................................................................... 12

*Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*,
   No. SA-18-CV-1335-XR, 2019 WL 2601347 (W.D. Tex. June 25, 2019) ........................... 8

*Golden v. Intel Corp.*,
   No., 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023) .............................................. 7

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
   681 F.3d 1323, 1339 (Fed. Cir. 2012) ................................................................................ 12

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017) ........................................................................................... 3

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018) .................................................................................... 4, 10

**Rules & Regulations**

Fed. R. Civ. P. 15(a)(2) ............................................................................................................ 14

Rule 12 ................................................................................................... 1, 3, 7, 8, 10, 14

Rule 12(b)(6) ............................................................................................... 1, 3, 4, 10, 14

Plaintiff Wolverine Barcode IP, LLC ("Wolverine") files this Response to Defendant Walgreen Co.'s ("Walgreens") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion" or "MTD") (Dkt. 31) and respectfully shows as follows.

## I. INTRODUCTION AND SUMMARY OF THE ARGUMENT

Walgreens' Motion should be denied. The First Amended Complaint ("FAC") is not the bare pleading Walgreens describes. It pleads the patent, the asserted claims, the accused Walgreens systems, the point-of-sale transaction architecture, and the Walgreens-controlled checkout workflow in detail. It also attaches a limitation-by-limitation amended claim chart. Dkt. 25 ¶¶ 6-28; Dkt. 25-1; Dkt. 25-2. Walgreens may disagree with those allegations. It may later argue that the accused myWalgreens Wallet barcode does not include a claimed special character or that some aspect of the store checkout flow is performed by a customer. But those are merits disputes. They are not grounds for dismissal under Rule 12(b)(6).

The FAC alleges that Walgreens maintains, operates, administers, provides, and controls a concrete offline transaction system: retail point-of-sale systems, vendor barcode scanners, vendor cash registers, Walgreens backend systems, Walgreens mobile applications, myWalgreens accounts, digital-wallet functionality, account-associated barcode functionality, Walgreens Cash rewards, stored-value and reward-redemption systems, digital receipts, product barcode scanning systems, product and price databases, transaction-processing systems, and related servers, software, and databases. Dkt. 25 ¶ 11. Exhibit B then maps claim 1 to that accused architecture. Dkt. 25-2 at 4-26.

Walgreens focuses on a handful of limitations - personal code, conversion into barcode format, special character, storage by the person, vendor-server processing, and approval signaling. Dkt. 31 at 3-12. Its arguments ask the Court to do three things a Rule 12 motion does not permit:

1

construe claim terms against Wolverine, weigh screenshots and counsel argument against pleaded facts, and draw inferences in Walgreens' favor about how the accused Walgreens systems operate internally. The Court should decline that invitation.

The special-character argument illustrates the problem. Walgreens assumes that the claimed "special character" must be visible as a human-readable symbol printed outside the barcode. Dkt. 31 at 3-4, 8-9; Dkt. 31-4 at 2-4. The claim does not say that. It requires a User ID Barcode "including at least one special character to distinguish the barcode as a User ID Barcode from a product barcode." Dkt. 25-2 at 3. The patent describes barcode processing in which the vendor server detects the User ID Barcode as distinct from product barcodes. Dkt. 25-1 at 5:64-6:13, 10:9-18. The FAC pleads that the Walgreens account-associated barcode includes encoded data, symbology, prefixes, field separators, application identifiers, or other encoded information that distinguishes the account barcode from ordinary product barcodes. Dkt. 25 ¶ 14. Whether that pleaded distinguishing information satisfies the claim is a claim-construction and fact question, not a pleading defect.

Walgreens' divided-infringement argument fails for the same reason. The FAC does not plead a disconnected set of independent customer acts. It pleads an integrated Walgreens checkout workflow. Walgreens provides or causes the generation of the account-associated barcode; maintains the myWalgreens account and reward balance; operates the barcode scanners, cash registers, POS systems, vendor servers, and backend systems; instructs customers how to present the barcode for redemption; and conditions receipt of the Walgreens Cash benefit on following the checkout process Walgreens designed. Dkt. 25 ¶¶ 11-26; Dkt. 25-2 at 4-26. At the pleading stage, that states a plausible direct-infringement theory under *Akamai*.

2

Nor should the case be dismissed with prejudice based on the Western District pre-filing order attached to Walgreens' Motion. Dkt. 31 at 1-2, 13-15; Dkt. 31-2; Dkt. 31-3. The order applies to filings in the Western District of Texas. It is not an injunction against filing in the Eastern District. It is not a Rule 12 adjudication of this FAC. It is not claim construction. It is not a finding by this Court that Wolverine's amended allegations fail Rule 8. Walgreens' request to convert an out-of-district filing-screening issue into dismissal with prejudice should be rejected.

The Motion should be denied. If the Court concludes that any allegation should be clarified, Wolverine respectfully requests leave to amend rather than dismissal with prejudice.

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint need only contain enough factual matter to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not require proof, and it does not permit the Court to resolve factual disputes or draw inferences against the pleader.

A plaintiff must place the accused infringer on notice of what activity is accused and include factual allegations that make infringement plausible. *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). But the Federal Circuit has rejected any rigid requirement that a complaint prove infringement or plead evidence for every claim element. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021).

For method claims, direct infringement exists when all steps are performed by or attributable to a single entity. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). Attribution may be shown when an alleged infringer conditions

3

participation in an activity or receipt of a benefit on performance of a step and establishes the manner or timing of that performance. *See id*. at 1023. Whether an accused system ultimately satisfies *Akamai* is fact intensive. At this stage, the question is only whether the FAC and Exhibit B plausibly allege a single-entity or attributable-performance theory.

Rule 12(b)(6) is also an improper vehicle for resolving claim-construction disputes or drawing factual inferences against the patentee where a plausible infringement theory exists under a nonfrivolous construction. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349-50 (Fed. Cir. 2018). Factual disputes that bear on the adequacy of a patent claim theory are likewise not resolved against the patentee on a motion to dismiss. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## III. DIRECT INFRINGEMENT

### A. The FAC gives fair notice of the accused Walgreens systems and transaction workflow.

Walgreens argues that the FAC and amended chart do not plausibly allege direct infringement. Dkt. 31 at 5-12. Plaintiff respectfully disagrees. The FAC identifies the '689 patent, quotes and describes the asserted claim architecture, pleads ownership, and alleges that Walgreens maintains and controls the Accused Walgreens Systems used to conduct offline point-of-sale transactions. Dkt. 25 ¶¶ 6-12. The asserted claims include claim 1 and dependent claim 2. Dkt. 25 ¶ 6; Dkt. 25-1 at 17:29-18:35.

The FAC also pleads the patent's technological context. The patent addresses offline commerce transactions using a machine-readable User ID Barcode, existing vendor barcode scanners, vendor cash registers, vendor servers, and a User Vendor Management Server. Dkt. 25 ¶ 7. It explains the problem with conventional cash, credit-card processing costs, and RFID/NFC systems requiring special non-contact readers. Id.; Dkt. 25-1 at 1:23-50, 2:1-31. The claimed

solution uses a User ID Barcode derived from a user-identifying number, includes a special character so the vendor server can distinguish the User ID Barcode from product barcodes, and routes transaction information through vendor-server and UVM-server processing. Dkt. 25 ¶¶ 7-10; Dkt. 25-1 at 3:15-45, 5:31-49, 9:53-10:31, 11:1-20.

The accused Walgreens architecture is pleaded with similar specificity. Wolverine alleges that Walgreens conducts in-store offline transactions using barcode scanners and POS cash registers; enables customers to present a myWalgreens account-associated barcode through the Walgreens mobile application; processes product barcodes and account-associated barcode information through Walgreens backend systems; applies Walgreens Cash rewards or stored value; sends approval information to the POS; and repeats the process for later transactions. Dkt. 25 ¶¶ 11-23; Dkt. 25-2 at 4-26.

That is more than fair notice. Exhibit B is a row-by-row claim chart for claim 1. It identifies the accused offline transaction, the vendor barcode scanner, the POS system, the myWalgreens account-associated barcode, the user-specific identifier, the backend account, Walgreens Cash rewards, product barcode scanning, vendor-server processing, approval signal, digital receipt information, and repeated purchase transactions. Dkt. 25-2 at 4-26. Walgreens' Motion confirms that Walgreens understands the accused theory well enough to attack each limitation. Dkt. 31 at 3-12.

## B. Walgreens' element-by-element arguments ask the Court to resolve factual and claim-construction disputes.

Walgreens' limitation-by-limitation arguments do not identify a Rule 8 defect. They identify disputes. Dkt. 31 at 6-12. For limitation 1(a), Walgreens argues that the FAC pleads the customer provides information to Walgreens rather than Walgreens providing a personal code to the customer. Dkt. 31 at 3, 7-8. But the FAC alleges that Walgreens provides, assigns, or causes

5

to be generated a user-specific identifier and account-associated barcode that is used for in-store transactions. Dkt. 25 ¶ 13. Exhibit B supports the same theory, explaining that the account-associated information functions as a user-specific identifier for the customer within Walgreens' backend system and is used during in-store transactions to identify the customer and enable rewards or stored value. Dkt. 25-2 at 5-6. Walgreens' contrary inference is not a basis for dismissal.

For limitation 1(b), Walgreens argues that Wolverine offers only a conclusion that the personal code is converted into barcode format. *See* Dkt. 31 at 3-4, 8. The FAC pleads that after the myWalgreens account-associated identifier exists, Walgreens converts or causes conversion of that identifier into barcode format, and the resulting account-associated barcode is presented through the Walgreens mobile application for in-store scanning. Dkt. 25 ¶ 14. Exhibit B identifies the account-associated barcode, the Walgreens mobile-app screenshot, and the use of that barcode at checkout. Dkt. 25-2 at 7-9. Walgreens is free to dispute how the barcode is generated, what data it encodes, or whether the code is generated by a mobile app, a backend service, or a combination of Walgreens-controlled components. Those disputes require evidence for resolution.

For limitation 1(c), Walgreens argues that the FAC says Walgreens stores the barcode rather than the person storing it. Dkt. 31 at 4-5, 9. The FAC alleges that the account-associated barcode is stored in User ID Barcode format in the Walgreens mobile application and digital wallet on the customer's device and is available for the customer to present at checkout. Dkt. 25 ¶ 15. That allegation is consistent with claim 2, which expressly recites that the User ID Barcode is stored by the person in a cell phone. Dkt. 25-1 at 18:30-35. Exhibit B likewise pleads that the customer can access and present the stored account-associated barcode through the Walgreens mobile application. Dkt. 25-2 at 10-11.

For limitations 1(d) and 1(e), Walgreens disputes the UVM/account and credit-limit allegations. Dkt. 31 at 9-10. The FAC alleges that Walgreens establishes a myWalgreens account corresponding to the personal code and maintains account-specific balances, Walgreens Cash rewards, stored-value information, and redemption limits in Walgreens backend systems. Dkt. 25 ¶¶ 16-18. Exhibit B ties those allegations to Walgreens' own myWalgreens materials, including the explanation that Walgreens Cash rewards are redeemed at checkout and deducted from the total price of the purchase. Dkt. 25-2 at 5-6, 12-17. Whether Walgreens Cash is ultimately a "fund," a "credit limit," or an equivalent under the asserted claim is not an issue for Rule 12 dismissal.

For limitations 1(f) through 1(i), Walgreens argues the FAC lacks enough facts about transmission to a vendor server, detection of the User ID Barcode, forwarding to a UVM server, approval signaling, and repeated transactions. Dkt. 31 at 10-12. The FAC pleads those facts. It alleges that product barcodes and the account-associated barcode are scanned at Walgreens POS systems, that product and account information are transmitted to Walgreens backend/vendor-server systems, that those systems distinguish account-associated barcodes from product barcodes, that Walgreens backend systems determine whether rewards or stored value are available, and that approval or redemption information is sent back to the POS to complete the transaction. Dkt. 25 ¶¶ 19-23; Dkt. 25-2 at 18-26. That is a plausible transaction-processing theory.

Walgreens relies on *Chapterhouse*, *Golden*, and *Encoditech*, but those cases do not require dismissal here. *Chapterhouse* held that a complaint must provide factual allegations connecting the accused product to the claim limitations. *See Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828, at *2-3 (E.D. Tex. Dec. 11, 2018). The FAC and Exhibit B do that. *Golden* involved allegations found too conclusory where the plaintiff did not plausibly tie the cited product materials to the asserted claim requirements. *See Golden v. Intel Corp.*, No. 2023-

7

1257, 2023 WL 3262948, at *2-3 (Fed. Cir. May 5, 2023). Here, the amended chart identifies the accused Walgreens checkout components and maps them to the claim rows. Dkt. 25-2 at 4-26. *Encoditech* likewise does not impose an evidentiary burden at the pleading stage; there, the court denied dismissal where the complaint and attached claim chart plausibly connected the accused product to the asserted limitations. *See Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *4-5 (W.D. Tex. June 25, 2019). Wolverine's amended pleading supplies the connection Walgreens says is missing.

At bottom, Walgreens asks the Court to test whether Wolverine can prove the internal operation of Walgreens' POS, barcode, wallet, rewards, and backend systems before discovery. That is not the Rule 12 inquiry. *Bot M8* requires plausibility, not proof. *See Bot M8*, 4 F.4th at 1352-53. The FAC meets that standard.

## IV. USER ID BARCODE AND SPECIAL CHARACTER

Walgreens' central argument remains the "special character" limitation. It contends that the FAC does not identify a special character because the screenshot of the scannable barcode does not visibly display human-readable letters or symbols. Dkt. 31 at 3-4, 8-9. That argument depends on a construction the claim does not compel and the Court has not adopted.

Claim 1 requires converting the personal code into barcode format to form a User ID Barcode, with the User ID Barcode "including at least one special character to distinguish the barcode as a User ID Barcode from a product barcode." Dkt. 25-2 at 3. The claim language focuses on distinguishing the User ID Barcode from a product barcode. It does not state that the special character must appear outside the machine-readable barcode, must be human-readable at the point of sale, or must be visible in a cropped screenshot attached to a pleading.

8

The specification reinforces that the special character is part of a barcode-processing architecture. The patent explains that the User ID Barcode is derived from a conventional barcode and includes a special character or characters to identify it as a personal ID code and to distinguish it from barcodes that incorporate product data. Dkt. 25-1 at 5:64-6:13. It later describes the vendor server detecting the special character in the User ID Barcode and recognizing that the barcode does not represent a product. Dkt. 25-1 at 10:9-18. Those disclosures support Wolverine's pleaded theory that the distinguishing information may be encoded in the barcode payload, symbology, prefix, field separator, application identifier, or other machine-readable information.

The FAC pleads exactly that. It alleges that the account-associated barcode corresponds to the user-specific identifier and includes encoded data, symbology, prefixes, field separators, application identifiers, or other encoded information that distinguishes the account-associated barcode from ordinary product barcodes scanned at Walgreens checkout. Dkt. 25 ¶ 14. Exhibit B likewise alleges that the account-associated barcode is scanned during in-store transactions and necessarily includes encoded information that distinguishes it from product barcodes used to identify retail items and pricing. Dkt. 25-2 at 7-9.

Walgreens' argument that the screenshot shows only a barcode made of vertical lines proves too much. Barcodes are machine-readable. A product barcode likewise may not visually display every encoded datum in human-readable form. The issue at hand is whether the accused account-associated barcode encodes distinguishing information that allows Walgreens' POS/vendor-server architecture to recognize it as an account/User ID Barcode rather than as an ordinary product barcode. Wolverine pleads that it does. Dkt. 25 ¶ 14; Dkt. 25-2 at 7-9, 18-22.

The Rule 11 letter attached as Exhibit 3 does not change the analysis. Dkt. 31-4. It repeats Walgreens' view that the special character must be visibly present and that any digital wallet

identifier cannot satisfy the claim unless the character appears in the barcode in the manner Walgreens proposes. Dkt. 31-4 at 2-4. That is claim construction and merits argument. It is not an evidentiary record establishing noninfringement as a matter of law. The letter also confirms that the parties dispute what the patent requires, as it quotes and argues over specification passages concerning how the User ID Barcode is distinguished from product barcodes. Dkt. 31-4 at 3-4.

Dismissal is not appropriate when the plaintiff's allegations are plausible under a nonfrivolous claim construction and the defendant's argument depends on resolving claim-construction or factual disputes against the patentee. *See Nalco*, 883 F.3d at 1349-50. *Aatrix* likewise confirms that factual allegations relevant to patent claims should not be resolved against the patentee on a Rule 12 record. *See Aatrix*, 882 F.3d at 1125. Walgreens may pursue its construction and noninfringement theory through the procedures this Court has ordered, including infringement contentions, eligibility contentions, claim construction, and discovery. It should not obtain dismissal by importing its preferred construction into Rule 12(b)(6).

## V. WALGREENS' DIVIDED-INFRINGEMENT ARGUMENT DOES NOT WARRANT DISMISSAL

Walgreens also argues that claim 1 requires multiple actors and that Wolverine fails to plead a legally sufficient divided-infringement theory. Dkt. 31 at 6-7, 12. The FAC pleads both Walgreens' own performance through its controlled systems and, alternatively, attribution of any customer or cashier steps under *Akamai*.

First, the accused method is performed through Walgreens' own instrumentalities. The FAC alleges that Walgreens maintains, operates, administers, provides, and controls the Accused Walgreens Systems. Dkt. 25 ¶ 11. Those systems include Walgreens retail POS systems, barcode scanners, vendor cash registers, backend systems, mobile applications, digital-wallet functionality, account-associated barcode functionality, Walgreens Cash rewards, product and price databases,

transaction-processing systems, servers, software, and databases. Id. The FAC further alleges that Walgreens controls the architecture as a whole and obtains monetary and commercial benefit from the accused transaction flow. Dkt. 25 ¶¶ 24-26.

Second, to the extent some claimed steps involve a customer presenting the barcode or a cashier scanning it, those steps are plausibly attributable to Walgreens. *Akamai* holds that an entity may be responsible for another's performance when it conditions participation in an activity or receipt of a benefit on performance of a step and establishes the manner or timing of that performance. *See Akamai*, 797 F.3d at 1023. The FAC alleges that Walgreens conditions the benefit of using Walgreens Cash rewards, stored value, or account-linked checkout functionality on the customer presenting the myWalgreens/account-associated barcode during the Walgreens checkout process, and that Walgreens establishes the manner and timing of that performance through its mobile application, wallet instructions, POS workflow, scanners, cash registers, and backend authorization systems. Dkt. 25 ¶¶ 11-26; Dkt. 25-2 at 4-26.

Walgreens' own public materials, incorporated into Exhibit B, support that pleading. Exhibit B cites Walgreens' explanation that a customer can spend Walgreens Cash rewards by providing a phone number or the contactless checkout barcode associated with the account during purchase, and that the savings are deducted from the total price of the purchase. Dkt. 25-2 at 5-6. The amended chart also identifies the mobile wallet barcode and the instruction to present or scan it at checkout. Id. at 7-11. Those allegations fit *Akamai* at the pleading stage.

Walgreens may later argue that customers, store employees, app components, payment processors, or backend systems operate independently in ways that defeat attribution. That argument requires facts. The FAC need not prove the internal allocation of every step before

11

discovery. It need only plead a plausible theory that Walgreens performs or controls the accused method. It does.

## VI. INDIRECT INFRINGEMENT

Walgreens' indirect-infringement arguments largely depend on its direct-infringement arguments. Dkt. 31 at 12-13. Because the FAC plausibly alleges direct infringement, the induced and contributory infringement claims should not be dismissed on that basis.

Induced infringement requires knowledge of the patent and knowledge that the induced acts constitute infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). Specific intent may be pleaded through circumstantial facts and reasonable inferences. See *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). The FAC alleges that Walgreens has known of the '689 patent and the technology underlying it at least since the filing of the action, and that Walgreens actively encourages or instructs customers and related users on how to use the accused products and services in a manner that infringes. Dkt. 25 ¶ 27. Exhibit B identifies the public-facing Walgreens instructions and materials showing customers how to use the account-associated barcode, wallet functionality, myWalgreens account, and Walgreens Cash redemption workflow at checkout. Dkt. 25-2 at 4-26.

Contributory infringement is also plausibly pleaded. The FAC alleges that Walgreens provides components and services especially made or adapted for use in the accused offline barcode transaction architecture and not staple articles suitable for substantial noninfringing use in the accused combination. Dkt. 25 ¶ 28. At this stage, those allegations are assessed together with the detailed direct-infringement allegations and Exhibit B's mapping of the accused POS, wallet, barcode, rewards, server, and authorization workflow. Dkt. 25 ¶¶ 11-28; Dkt. 25-2 at 4-26. *See Bill of Lading*, 681 F.3d at 1339-42.

If the Court concludes that any indirect-infringement allegation should be made more specific, the proper remedy is leave to amend. The FAC is at least sufficient to permit the direct-infringement claim to proceed.

## VII. WALGREENS' REQUEST FOR DISMISSAL WITH PREJUDICE BASED ON THE WESTERN DISTRICT ORDER SHOULD BE REJECTED

Walgreens devotes a separate section to arguing that this case should be dismissed with prejudice because Plaintiff's counsel is subject to a Western District of Texas pre-filing order and because Judge Albright's chambers denied permission to file a proposed Walgreens complaint in that District. Dkt. 31 at 1-2, 13-15; Dkt. 31-2; Dkt. 31-3. That argument should be rejected.

The Western District order is exactly what it says it is: an order restricting future patent complaints filed by counsel in the Western District of Texas without advance permission. Dkt. 31-2 at 2-3. It is not an injunction issued by this Court. The order is not an injunction against filing patent cases in the Eastern District of Texas. It is not a judgment adjudicating the merits of Wolverine's FAC. It is not claim construction of the '689 patent. Nor is it a finding that the amended allegations in Dkt. 25 fail Rule 8.

The January 8, 2026 email attached to Walgreens' Motion does not supply the missing merits ruling. The email states that the Western District reviewed an original complaint and corresponding claim chart and that the request to file the complaint in that district was denied. Dkt. 31-3 at 5. It does not provide findings, construe claim terms, evaluate the FAC, address the amended chart filed at Dkt. 25-2, or purport to bind this Court. It also predates the FAC now at issue. Dkt. 25.

Walgreens' requested remedy is extraordinary. It asks the Court to dismiss a patent owner's claims with prejudice not because this Court has adjudicated the amended allegations on their merits, but because another court required counsel to seek leave before filing in that other court.

13

That is not Rule 12(b)(6). If Walgreens believes counsel violated an order, it may address that with the issuing court. If Walgreens believes a filing in this Court violates Rule 11, Rule 11 supplies its own procedures. A motion to dismiss the FAC is not a vehicle to impose a merits-ending sanction based on an out-of-district filing-screening process.

Nor do Walgreens' cited sanction cases require dismissal. Dkt. 31 at 13-15. Those cases involve materially different procedural contexts, including dismissals for abuse of process or preclusion issues after findings not present here. They do not establish that an Eastern District patent complaint must be dismissed with prejudice because a Western District pre-filing request was denied. This Court should decide the FAC under Rule 8 and Rule 12. Under those standards, the FAC plausibly states infringement.

## VIII. LEAVE TO AMEND

If the Court concludes that any allegation is insufficient, Wolverine respectfully requests leave to amend. Rule 15 directs that leave should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). This case is in its early stage. The Court's Docket Control Order sets March 30, 2027 as the deadline to amend pleadings and provides that leave is not necessary before that date unless the amendment seeks to assert additional patents. Dkt. 29 at 4. No claim construction, fact discovery, or expert discovery has occurred.

Walgreens asks for dismissal with prejudice, but the Motion confirms that the disputed issues are capable of clarification if the Court believes clarification is needed. The appropriate remedy would be amendment, not a merits-ending dismissal.

14

## IX. CONCLUSION

For the foregoing reasons, Wolverine respectfully requests that the Court deny Walgreens'

Motion to Dismiss the First Amended Complaint. In the alternative, Wolverine requests leave to

amend.

Respectfully submitted,

**Ramey LLP**

By: */s/ William P. Ramey, III*
    William P. Ramey, III
    Texas Bar No. 24027643
    446 Heights Blvd., Suite 200
    Houston, Texas 77007
    (713) 426-3923 (telephone)
    (832) 900-4941 (fax)
    wramey@rameyfirm.com

    **Attorneys for Plaintiff Wolverine Barcode**
    **IP, LLC**

15

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 9, 2026, the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system.

*/s/ William P. Ramey, III*
William P. Ramey, III

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned certifies that this filing responds to a dispositive motion and no certificate of conference is required.

*/s/ William P. Ramey, III*
William P. Ramey, III

16